### S03G0875. CRITSER et al. v. McFADDEN.

(593 SE2d 330)

CARLEY, Justice.

Mrs. Debra Critser suffers from bladder failure and "saddle numbness." At all relevant times during this litigation, it has been undisputed that her condition is attributable to either arachnoiditis or endometriosis. It is likewise without dispute that if she has arachnoiditis, the only possible cause is the administration of spinal injections by Dr. Isaac McFadden in treating her for knee pain. Mrs. Critser and her husband filed suit, alleging that she has arachnoiditis resulting from negligent injections. At trial, experts testified

on behalf of the plaintiffs. Dr. McFadden defended by producing expert testimony that Mrs. Critser suffers from endometriosis. At the request of the defense, the trial court gave the following charge:

> First, you should consider the question of negligence or whether the defendant departed from the standard of care, as I will explain that phrase to you. If you find that the defendant did not depart from the applicable standard of care, then you should go no further and you would return a verdict in favor of the defendant. If you find that the defendant departed from the standard of care, you would then consider the second question. That question is whether the acts or omissions departing from the standard of care proximately caused the damages the plaintiff is claiming. I will instruct you further on the meaning of proximate cause. If you find that the alleged negligent acts or omissions of the defendant were not the proximate cause of the damages claimed, then you would go no further and you would return a verdict in favor of the defendant. If you find that the defendant acted negligently and that those negligent acts or omissions proximately caused the damages claimed, you should then consider the third issue, which is the amount of damages.

The jury returned a verdict in favor of Dr. McFadden (Appellee) and, on appeal, the Court of Appeals found the instruction not to be error. *Critser v. McFadden*, 259 Ga. App. 546, 547 (2) (578 SE2d 222) (2003). We granted certiorari to determine whether the charge is a permissible jury instruction in a negligence action in this state.

A jury charge should correctly state the law applicable to the issues in the case. *Griffith v. Newman*, 217 Ga. 533, 534 (4) (123 SE2d 723) (1962). The Court of Appeals cited only *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 591 (2) (569 SE2d 242) (2002), as authority supporting the giving of the instruction. *Johnson* sets forth the necessary elements of a negligence case. See also *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). However, it does not impose any requirement that the jury address those elements in any particular order.

> "Whether a physician has used that degree of care and skill required by [OCGA § 51-1-27] is generally a question for the jury's determination. [Cits.] . . . . In determining such issues, the jury may consider *all* the attendant facts and circumstances which may throw light on the ultimate question. [Cits.] This includes the right to hear evidence as

to facts occurring after the alleged negligence as well as to facts happening prior thereto . . . [.] 'And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by negligence.'" (Emphasis in original.)

*Word v. Henderson*, 220 Ga. 846, 849 (142 SE2d 244) (1965). A charge which restricts the order for addressing the constituent elements of a negligence claim can have the harmful effect of precluding the jury from giving proper consideration to the totality of the facts and circumstances relevant to its ultimate determination. The disputed issue in this case is whether the cause of Mrs. Critser's medical condition is Appellee's professional negligence or endometriosis. The fact that she currently suffers from bladder failure and "saddle numbness" does not raise even a presumption of his lack of proper care, skill, or diligence. *Hyles v. Cockrill*, 169 Ga. App. 132, 134 (3) (312 SE2d 124) (1983), overruled on other grounds, *Ketchup v. Howard*, 247 Ga. App. 54, 61 (2) (543 SE2d 371) (2000). However, a physician is responsible for a patient's condition which is shown to result from a failure to exercise that degree of care and skill ordinarily employed by the medical profession generally, under similar conditions and like surrounding circumstances. *Brannen v. Prince*, 204 Ga. App. 866, 871 (7) (421 SE2d 76) (1992), overruled on other grounds, *Gillis v. City of Waycross*, 247 Ga. App. 119, 120 (543 SE2d 423) (2000). In this case, the jury heard evidence that spinal injections, if negligently administered, can result in arachnoiditis and that Mrs. Critser suffers from that condition as the result of the treatment provided by Appellee. Thus, there is evidence that she experienced a "bad result" which, according to the applicable standard of medical care, was attributable to Appellee's professional negligence. However, based upon the instruction that the proximate cause of the injury could not be considered unless Appellee's breach of the standard of care was first established, the jurors may well have erroneously concluded that the evidence that Mrs. Critser suffers from arachnoiditis was not a relevant factor in their determination as to whether he negligently injected her.

A jury charge " 'must not be so phrased so as to have the tendency to confuse and mislead the jury or to becloud the issues in the case.' [Cit.]" *Baxter v. Wakefield*, 259 Ga. App. 475, 477 (2) (577 SE2d 804) (2003). Jurors should be instructed that they must find all of the elements of a negligence claim before returning a verdict in favor of the plaintiff. Thus, a trial court,

in instructing the jury in regard to the alleged acts of com-

mon law negligence upon which recovery is sought by the plaintiff, should clearly inform the jury that it is their duty to determine not only whether the act or acts were committed, but also, if committed, whether the same amounted to negligence, and if so, whether such negligent act or acts proximately caused plaintiff's injuries.

*Hughes v. Brown*, 109 Ga. App. 578, 579 (2) (136 SE2d 403) (1964). However, a trial court should not instruct the jury that, in determining whether the plaintiff has met the burden of proving that the defendant's negligence was a proximate cause of the injury, it must address the various elements in a set order. Accordingly, we disapprove the charge that was given in this case.

The dissent concedes that "there is no requirement or recommendation that a trial court instruct the jury to consider the elements of negligence in any particular order," but concludes that "there is no error, much less harmful error, in doing so in this case." Dissent, p. 657. In support of the conclusion that giving the unauthorized charge was not harmful error here, the dissent mistakenly assumes that our disapproval of the instruction is based upon the mere fact that Mrs. Critser suffered a "bad result" following Appellee's treatment of her knee pain. To the contrary, however, today's holding does not in any way conflict with the long-standing and well-recognized principle that the doctrine of res ipsa loquitur is not applicable in medical malpractice cases in Georgia. Instead, our conclusion that the charge constitutes reversible error in this case is premised upon the expert testimony that the "bad result" from which Mrs. Critser suffers is arachnoiditis, which condition resulted from Appellee's negligent administration of spinal injections.

In a case, such as this, in which there is expert medical evidence showing that the patient suffers from a condition resulting from a physician's failure to adhere to the degree of care and skill used by the profession generally, the trier of fact is authorized to find that the bad result was caused by medical negligence. *Word v. Henderson*, supra at 849. Thus, the expert testimony regarding the proximate cause of Mrs. Critser's bladder failure and "saddle numbness" is a highly relevant factor in the jury's ultimate determination of whether Appellee exercised the requisite degree of care and skill in treating his patient. If the proximate cause is arachnoiditis, then he breached the standard and would be liable for the resulting damages. If, on the other hand, the proximate cause is endometriosis, then he did not breach the standard and he would not be liable for Mrs. Critser's bladder failure and "saddle numbness." By informing the jury that it must resolve whether Appellee breached the standard of care before ever considering the proximate cause of Mrs. Critser's

condition, however, the instruction may have given the erroneous impression that the expert testimony that she has arachnoiditis did not have any bearing on whether he negligently administered the injections. The error would be harmful, because it deprived the jury of the opportunity to consider the expert testimony that she has arachnoiditis resulting from Appellee's treatment of her as an attendant fact and circumstance showing that he deviated from the applicable standard of care. *Word v. Henderson*, supra at 849. The trial court should not have given the misleading charge, and the Court of Appeals erred in affirming the judgment entered on the verdict returned in favor of Appellee.

*Judgment reversed. All the Justices concur, except Fletcher, C. J., and Hines, J., who dissent.*

HINES, Justice, dissenting.

I respectfully dissent because the instruction given to the jury on the elements of negligence was not misleading. The charge correctly sets forth the requirements that a negligence plaintiff demonstrate a legal duty on the part of the defendant, the defendant's breach of that duty, a causal connection between such breach and the resulting injury, and damage to the plaintiff. *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 272 (1) (578 SE2d 106) (2003); *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 591 (2) (569 SE2d 242) (2002). While there is no requirement or recommendation that a trial court instruct the jury to consider the elements of negligence in any particular order, there is no error, much less harmful error, in doing so in this case.

The majority's finding that the instruction is fatally misleading is based upon the faulty conclusion that the jury was precluded from giving "proper consideration to the totality of the facts and circumstances relevant to its ultimate determination." This conclusion is premised upon the finding that there was evidence that the plaintiff experienced a "bad result." The majority gives lip service to the important legal principle that the fact that the plaintiff suffers from certain medical conditions, namely bladder failure and "saddle numbness" fails to raise even the presumption of the defendant doctor's lack of proper care, skill, or diligence. But in reality, it is implicit in the majority approach that the fact that a plaintiff has had a less-than-satisfactory outcome following medical treatment establishes professional negligence. Even when the evidence portrays a "bad result," it must still be measured by the method shown by medical witnesses to be negligence. *Kapsch v. Stowers*, 209 Ga. App. 767, 769 (434 SE2d 539) (1993).

"Res ipsa loquitur is not applicable in medical malpractice

cases in Georgia. 'In a medical malpractice case, "the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case. 'The . . . jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill.' " (Cits.)' *Horney v. Lawrence*, 189 Ga. App. 376, 377 (2) (375 SE2d 629) (1988). Expert testimony must also set forth how or in what way the defendant deviated from the parameters of the acceptable professional conduct. *Loving v. Nash*, 182 Ga. App. 253 (1) (355 SE2d 448) (1987)." *Austin v. Kaufman*, 203 Ga. App. 704, 705 (1) (417 SE2d 660) (1992).

*Kapsch v. Stowers* at 767 (1). Thus, it is inescapable that the jury consider the applicable standard of care and any departure of the defendant from it for such deviation is the gravamen of a cause of action for medical negligence. Were it otherwise, the jury would be authorized to return a verdict of liability based solely upon the sympathetic circumstances of medical treatment of the plaintiff by the defendant and resulting damage to the plaintiff.

The majority states that its holding does not conflict with the well-settled principle that the doctrine of res ipsa loquitur is not applicable in medical malpractice cases. But of course it does. The majority casts itself in the role of the jury when it focuses on certain expert testimony that the "bad result" suffered by the plaintiff is a condition brought about by the defendant's negligent administration of spinal injections. Even so, the majority acknowledges that the condition suffered must result from "a physician's failure to adhere to the degree of care and skill used by the profession generally." Thus, we are back to the gravamen of medical negligence. The jury simply must consider the critical question of whether there was any deviation from the professional standard, which was the focus of the methodical charge in this case.

Perhaps what is most puzzling about the majority opinion is its inherent contradiction. Without any legal support whatsoever, the majority states, "a trial court should not instruct the jury that, in determining whether the plaintiff has met the burden of proving that the defendant's negligence was a proximate cause of the injury, it must address the various elements in a set order." However, the majority opinion itself effectively selects a particular element of negligence as preeminent, for the whole focus of the majority opinion is the element of proximate cause.

This Court must examine the totality of the instructions to the jury in determining whether the charge in question is misleading.

*Ricketts v. State*, 276 Ga. 466, 473 (6) (579 SE2d 205) (2003). Here, the jury was not precluded in any way from considering evidence, circumstantial or otherwise, of the plaintiff's "bad result." It was merely instructed to follow the law and measure such evidence in light of the applicable standard of care. It did so, and returned a verdict in favor of the defendant physician. There is no legal basis to reverse the Court of Appeals's affirmance of the judgment entered on that verdict.

I am authorized to state that Chief Justice Fletcher joins in this dissent.

DECIDED MARCH 1, 2004 —
RECONSIDERATION DENIED MARCH 19, 2004.

*Lamar, Archer & Cofrin, Robert C. Lamar, David W. Davenport*, for appellants.

*Love, Willingham, Peters, Gilleland & Monyak, Michael J. Hannan III*, for appellee.

*Owen, Gleaton, Egan, Jones & Sweeney, Rolfe M. Martin, Amy Jo Kolczak*, amici curiae.