S08G1845. SMITH et al. v. FINCH et al.

(681 SE2d 147)

HUNSTEIN, Presiding Justice.

We granted certiorari to examine the propriety of the so-called "hindsight" jury instruction prescribed for use in medical malpractice actions at Section 62.311 of the Georgia Suggested Pattern Jury Instructions: Civil Cases. Though the Court of Appeals has generally approved the use of this jury instruction, this Court has never considered it. Finding a portion of the hindsight instruction to be inaccurate and misleading, we disapprove the instruction in its current form and reverse the judgment below.

Appellants Clay and Tracie Smith sued various physicians and other health care providers for medical malpractice arising from appellees' failure to correctly diagnose their son, Justin, with Rocky Mountain Spotted Fever ("RMSF"). It is undisputed that the appellee physicians were incorrect in diagnosing Justin with a viral illness and that the correct diagnosis was RMSF, a relatively rare but serious disease transmitted by ticks. At trial, the Smiths presented expert medical testimony to the effect that Justin's presenting symptoms, including a macular rash[1] originating on his hands, arms, legs, and feet, were "classic" of RMSF and that, due to the lack of a quick diagnostic test for the disease and the disease's potentially severe and even lethal effects, the standard of care was to maintain a high index of suspicion and low threshold for treatment of the disease. These experts testified as to their respective views that each of the four defendant physicians had breached the standard of care by (1) failing to obtain a sufficiently detailed medical history for Justin, specifically with respect to the fact and/or timing of his recent tick exposure, to enable them to actively consider RMSF as the cause of Justin's symptoms; and (2) failing to consider as a diagnosis and prophylactically treat Justin for RMSF due to the nature of his symptoms and the time (summer) and place (Georgia, where RMSF, according to appellants' experts, is endemic) of their onset. Appellees, on the other hand, asserted that Justin's symptoms were equally consistent with the diagnosis of a viral illness. The physicians also testified that cases of RMSF had been either rare or

---

[1] Expert testimony established that a macular rash is characterized by flat blemishes which blanch with pressure, as distinguished from a petechial rash, which resembles broken blood vessels and does not blanch with pressure.

nonexistent in their practices and that Justin's macular rash did not trigger their consideration of RMSF because they had been trained to associate RMSF with a petechial rash. Though the evidence showed that by the time Justin was correctly diagnosed, his rash had progressed to a petechial rash, it is undisputed that this transformation did not occur until after the alleged misdiagnoses and thus the physicians did not have the "benefit" of this observed symptom at the time they examined and diagnosed him.

In its jury charge, the court instructed the jury on general concepts of professional negligence, the standard of care, foreseeability and proximate cause. Over appellants' objections, the court also gave the so-called hindsight instruction:

> In a medical malpractice action, a defendant cannot be found negligent on the basis of an assessment of a patient's condition that only later, in hindsight, proves to be incorrect as long as the initial assessment was made in accordance with reasonable standards of medical care. In other words, the concept of negligence does not include hindsight. Negligence consists of not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible.

Suggested Pattern Jury Instructions, Vol. I: Civil Cases (4th ed.[2]), § 62.311. The jury ultimately returned a defense verdict, and, on appeal, the Court of Appeals affirmed, finding the hindsight charge to have been appropriate. *Smith v. Finch*, 292 Ga. App. 333 (665 SE2d 25) (2008).

1. "A jury charge should correctly state the law applicable to the issues in the case. [Cit.]" *Critser v. McFadden*, 277 Ga. 653, 654 (593 SE2d 330) (2004). We now hold that the hindsight instruction, as currently conceived, is not a correct statement of Georgia law as to the standard of care in medical malpractice cases. Specifically, the final sentence of the instruction is plainly inconsistent with the medical decision-making process, which often requires the consideration of unlikely but serious consequences in the diagnosis and treatment of disease, and is generally inconsistent with the standard for foreseeability in our negligence law.

---

[2] Though a 5th edition of the pattern jury instructions has now been published, the 4th edition was in effect at the time of trial in this case. Moreover, the language of the charge in both editions is identical. See Suggested Pattern Jury Instructions, Vol. I: Civil Cases (5th ed.), § 62.311. Note also that, due to an apparent slip of the tongue, the charge actually given by the trial court substituted the word "possible" for "probable" in the last sentence of the charge.

To establish professional medical negligence the evidence presented by the patient must show a violation of the degree of care and skill required of a physician. [Cit.] Such standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally. [Cits.]

*Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 664 (3) (222 SE2d 162) (1975). See also OCGA § 51-1-27. Thus, it is well recognized that "an after-the-fact assessment of facts or evidence cannot be the basis of a negligence claim 'so long as the initial assessment was made in accordance with the reasonable standards of medical care. . . .'" *Holbrooks v. Fokes*, 195 Ga. App. 418 (393 SE2d 718) (1990). The first sentence of the hindsight charge presents this concept in a straightforward manner, and we have no quarrel with it.[3]

The third sentence of the hindsight charge, however, goes far beyond this noncontroversial notion and is actually inconsistent with the standard of care in many medical malpractice cases. As Georgia courts have recognized, the applicable standard of care often requires employment of a "differential diagnosis" methodology, whereby "'[t]he physician considers all relevant potential causes of the [patient's] symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history.'" (Footnote omitted.) *Shiver v. Georgia & Florida Railnet*, 287 Ga. App. 828, 829 (1) (652 SE2d 819) (2007). See also *Hawkins v. OB-GYN Assocs.*, 290 Ga. App. 892, 893 (1) (660 SE2d 835) (2008) (describing differential diagnosis methodology); *Cherry v. Schwindt*, 262 Ga. App. 48, 48-49 (584 SE2d 673) (2003) (same). In this case, for example, appellants presented expert testimony to the effect that RMSF should have been included in the physicians' respective differential diagnoses because of Justin's presenting symptoms and the fact that it was summertime in Georgia, as well as because of the disease's potentially severe effects if left untreated. Having heard this testimony, the jury was then instructed, via the third sentence of the hindsight instruction, that, as a matter of law, negligence may not be found if the injury is "only remotely and slightly possible." Given the evidence that RMSF is a disease that is relatively rare, i.e., "slightly possible," this language effectively instructed the jury to disregard appellants' experts' characterization of the standard of care.

In addition, the third sentence of the charge misstates the

---

[3] We note that this portion of the instruction is appropriate in any medical malpractice case in which the facts warrant it, i.e., where the negligence claim is based in whole or in part on the assertion that the physician made an incorrect assessment of a patient's condition.

standard for analyzing foreseeability. General negligence law holds that negligence may be established where it is shown that "by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." (Citations and punctuation omitted.) *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004). Accord *Anderson v. Sears Roebuck & Co.*, 292 Ga. App. 603 (1) (b) (664 SE2d 911) (2008). The third sentence of the hindsight charge, however, instructs juries that liability may be premised only on those injurious results that are "probable and likely to happen." As such, it is inaccurate and misleading.[4]

Accordingly, we expressly disapprove the use of the third sentence of the hindsight instruction. In addition, while we do not find the second sentence of the instruction to be a facially inaccurate statement of law, we do find that it adds nothing of substance to the first sentence and, being thus duplicative, may serve to unduly emphasize the notion that hindsight has no role in the assessment of negligence. As such, we disapprove its use as well. See *Tolbert v. Duckworth*, 262 Ga. 622 (1) (423 SE2d 229) (1992) (disapproving pattern instruction because concepts therein adequately covered in other standard instructions). See also *Bruce v. Calhoun First Nat. Bank*, 134 Ga. App. 790, 792 (3) (216 SE2d 622) (1975) ("repetitious instructions are not desirable"). In so doing, we overrule those cases in which the giving of the second and third sentences of the current hindsight instruction has been upheld, including, e.g., *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622 (4) (610 SE2d 546) (2005); *Betha v. Ebanks*, 264 Ga. App. 4 (1) (589 SE2d 831) (2003); *Cherry*, supra, 262 Ga. App. at 51 (2); *Brannen v. Prince*, 204 Ga. App. 866 (6) (421 SE2d 76) (1992), overruled in part on other grounds, *Gillis v. City of Waycross*, 247 Ga. App. 119 (543 SE2d 423)

---

[4] We note also that our research has uncovered no other state whose courts have approved a hindsight instruction with language similar to that in the third sentence of our current hindsight charge. Of the handful of published cases from other jurisdictions in which some form of a hindsight instruction has been expressly approved, see Annotation, *Propriety of "Hindsight" Charge in Medical Malpractice Actions*, 124 ALR5th 623 (2004) (identifying a total of only 32 decisions nationwide – 22 of them rendered by our Court of Appeals – addressing the hindsight instruction), we have found none that has involved a charge with language approximating that of the third sentence of our current charge. See, e.g., *Keaton v. Greenville Hosp. System*, 514 SE2d 570, 574 (II) (S.C. 1999) (approving instruction stating, "[i]n considering whether a physician, a resident, or nurse has exercised reasonable judgment in a given case, you must consider such judgment in relation to the facts as they existed at the time the judgment was made, and not in light of what hindsight may reveal"); *Sewell v. Internal Medicine & Endocrine Assocs.*, 600 So2d 242, 243 (Ala. 1992) (approving instruction stating, "you must determine the defendants' conduct at the time they were treating [the patient]. You must not judge their care and treatment . . . in retrospect, with hindsight, or based upon what was learned or on what happened after they made their decisions").

(2000); *Haynes v. Hoffman*, 164 Ga. App. 236 (3) (296 SE2d 216) (1982).[5]

2. Because the third sentence of the hindsight instruction essentially instructed the jury to disregard appellants' expert testimony regarding the standard of care, the instruction was prejudicial, and the judgment below must be reversed. See generally *Dent v. Memorial Hosp.*, 270 Ga. 316 (509 SE2d 908) (1998) (reversing judgment where jury instructions found contradictory); *Clements v. Clements*, 247 Ga. 787 (2) (279 SE2d 698) (1981) (same).

*Judgment reversed. All the Justices concur, except Hines and Melton, JJ., who concur in part and dissent in part.*

MELTON, Justice, concurring in part and dissenting in part.

Although I agree that the third sentence of the hindsight charge given in this case is inconsistent with the standard of care in many medical malpractice cases and that its use should be disapproved, I do not agree with the majority's decision to disapprove the use of the second sentence of the jury charge given here. As the majority concedes, the second sentence of the charge is a facially accurate statement of law. As such, this accurate statement of law should be included in, rather than excluded from, the language of the charge at issue in this case. See *Critser v. McFadden*, 277 Ga. 653, 654 (593 SE2d 330) (2004) ("A jury charge should correctly state the law applicable to the issues in the case") (citation omitted). Indeed, rather than placing "undu[e] emphasi[s on] the notion that hindsight has no role in the assessment of negligence," as the majority suggests, the second sentence of the charge merely simplifies, in an accurate way, the legal concept outlined in the first sentence of the charge. Compare *Holbrook v. Fokes*, 195 Ga. App. 418 (393 SE2d 718) (1990) (where initial assessment made in accordance with reasonable standards of medical care, "an after-the-fact assessment of facts or evidence cannot be the basis of a negligence claim") with the second sentence of the Jury Instructions ("[T]he concept of negligence does not include hindsight."). In this regard, the second sentence should remain part of the overall charge as a means of further *assisting* the jury during its deliberations.

By the majority's analysis, however, any pattern jury charge containing additional language that clarifies or simplifies legal

---

[5] We also expressly disapprove in future cases the use of the "later acquired knowledge" standard under which the Court of Appeals has heretofore evaluated the giving of the hindsight instruction. See, e.g., *Horton v. Eaton*, 215 Ga. App. 803, 807 (4) (452 SE2d 541) (1994) (hindsight instruction permitted "'where the evidence raises an issue as to whether the negligence claim is based on later acquired knowledge or information not known or reasonably available to the defendant physician at the time the medical care was rendered'").

concepts outlined earlier in the charge — even in an entirely accurate way — is now in doubt and would be subject to disapproval by this Court. Such a result is untenable, as it unduly restricts a trial court in its efforts to fulfill its responsibility of providing the jury with "instructions which are relevant and necessary [for the jury] to weigh the evidence and enable the jury to discharge its duty." (Citation and punctuation omitted.) *Tillman v. Massey*, 281 Ga. 291, 294 (1) (637 SE2d 720) (2006). I therefore respectfully dissent from the majority's conclusion that the use of the second sentence in the jury charge given here should be disapproved.

I am authorized to state that Justice Hines joins in this dissent.

DECIDED JUNE 29, 2009 —
RECONSIDERATION DENIED JULY 28, 2009.

*David S. Bills, Benjamin L. Bagwell*, for appellants.

*McClure, Ramsay, Dickerson & Escoe, John A. Dickerson, Larry L. Hicks II, Forrester & Brim, Weymon H. Forrester, Tracy M. Morgan, Elizabeth F. Latta*, for appellees.

*James D. Summerville, Donald J. Palmisano, Jr., Peters & Monyak, Robert P. Monyak, Jeffrey S. Bazinet*, amici curiae.