A09A0055, A09A0056. GILLEY et al. v. HUDSON et al.;
and vice versa.

(682 SE2d 627)

BARNES, Judge.

Patrick Joe Gilley, Jr., dislocated his hip playing football in 2001 when he was 12. Dr. Mark C. Hudson was nearby and responded to a bystander's request to help Gilley, whom he examined and accompanied to the hospital. After they arrived at the emergency room, Hudson assumed responsibility for Gilley's care and reduced the dislocation, moving the femur back into the hip socket. A follow-up x-ray revealed that the head of Gilley's femur, the growth plate, had separated from his femur. Despite further surgical intervention, Gilley's hip ultimately had to be surgically fused, resulting in permanent physical limitations.

The trial court initially granted summary judgment to Dr. Hudson, holding that he was entitled to immunity under the "Good Samaritan" statute, OCGA § 51-1-29. This court reversed, holding that a genuine issue of material fact existed as to whether Dr. Hudson rendered "emergency care at the scene of an accident or emergency" and thus was entitled to immunity under the statute. *Gilley v. Hudson*, 283 Ga. App. 878 (642 SE2d 898) (2007).

After remand, the case was tried before a jury, which returned a defense verdict. In Case No. A09A0055, Gilley appeals, arguing that the trial court erred in giving the "hindsight charge" to the jury. In Case No. A09A0056, Dr. Hudson cross-appeals, arguing that the trial court should have granted him a directed verdict on his Good Samaritan defense after Gilley's expert testified unexpectedly that an orthopedic emergency existed when Dr. Hudson manipulated Gilley's femur back into his hip socket. The Supreme Court of Georgia having disapproved a portion of the hindsight charge in *Smith v. Finch*, 285 Ga. 709 (681 SE2d 147) (2009), we reverse the judgment entered on the defense verdict. We further find that the

trial court did not err in denying Hudson's motion for a directed verdict based on the Good Samaritan defense.

1. "A jury charge should correctly state the law applicable to the issues in the case. [Cit.]" *Critser v. McFadden*, 277 Ga. 653, 654 (593 SE2d 330) (2004). In this case, Dr. Hudson, who is an osteopath and family practitioner, testified that after he was summoned to examine Gilley on the football field, he suspected a dislocated hip, made the boy as comfortable as he could, and rode with him in an ambulance to the emergency room. At the hospital, an x-ray revealed a complete dislocation of Gilley's left hip. After conferring with an orthopedic surgeon and Gilley's mother, Hudson directed a nurse anesthetist to administer medicine to help Gilley relax. After two attempts, Hudson stood on the x-ray table with Gilley lying beneath him and applied traction until he heard "that clunk that accompanies a successful reduction." A second x-ray revealed that the growth plate at the top of the femur had slipped. Gilley was then transferred to another hospital, where an orthopedic surgeon attempted to repair the separation using screws in an open reduction. The repair was unsuccessful, and Gilley's hip had to be fused surgically, which resulted in permanent physical limitations.

At trial, Gilley's experts testified that a growing child has a "growth plate" between the ball of his hip and the head of the femur, which is made of cartilage and thus not as strong as the surrounding bone, therefore vulnerable to trauma. The treatment of a hip dislocation in a child must be handled more cautiously than one in an adult because of the risk that the growth plate may be knocked off the femur, especially if the plate was damaged during the dislocation. It is difficult if not impossible to determine beforehand whether the growth plate had been damaged, as a fracture in that location is not always visible by x-ray. Dr. Hudson breached the applicable standard of care, the experts said, by failing to use general anesthesia and muscle relaxants, which would have reduced the tension exerted by the displaced hip and surrounding muscles and thus reduced the force necessary to reduce the dislocation. Dr. Hudson also should have used a real-time x-ray machine to visualize any potential displacement of the femoral head during the attempted reduction, they said.

Dr. Hudson's experts testified that Dr. Hudson did not violate the applicable standard of care, and one expert said that "in a large percentage of these cases," the growth plate is damaged during the initial injury that dislocates the hip. Unfortunately, these fractures cannot be detected by x-ray if they are not displaced, and Gilley's initial x-ray revealed no displacement. Consequently, the defense argued, Dr. Hudson had no way to know whether Gilley had a pre-existing fracture in the growth plate of his left femur, or that the

femoral head would move during the reduction. Gilley was in excruciating pain, and the dislocation needed to be reduced within six to eight hours at the most to restore the blood flow and avoid further complications, an expert testified. Dr. Hudson testified that the force he used to manipulate the hip joint was not sufficient to fracture the growth plate.

The trial court gave the jury the suggested pattern charge on hindsight as follows:

> In a medical malpractice action such as this, a defendant cannot be found negligent on the basis of an assessment of a patient's condition which only later, in hindsight, proves to be incorrect as long as the initial assessment was made in accordance with reasonable standards of medical care. In other words, the concept of negligence does not include hindsight. Negligence consists of not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely or slightly possible.

"[T]he final sentence of [this] instruction is plainly inconsistent with the medical decision-making process, which often requires the consideration of unlikely but serious consequences in the diagnosis and treatment of disease, and is generally inconsistent with the standard for foreseeability in our negligence law." *Smith v. Finch*, supra, 285 Ga. at 710 (1). While the court in *Smith* approved the first sentence of the hindsight charge, it held that the second sentence was duplicative and the third sentence was wrong. In fact, the third sentence of the pattern hindsight charge was "actually inconsistent with the standard of care in many medical malpractice cases." Id. at 711-712 (1). Finally, the court also expressly disapproved the use of the "later acquired knowledge" standard of evaluating the giving of this charge, in which this court has permitted the charge if the evidence raises an issue as to whether the negligence claim is based on later-acquired knowledge not known to the physician when care was rendered. Id. at 713 (1), n. 5.

In this case, Gilley presented expert testimony that the treating physician should have put him under general anesthesia and used a fluoroscope to determine whether the growth plate on his femur was already detached or was being detached while his hip was being relocated, which may occur in adolescents with this injury.

> [T]he third sentence of the [hindsight] charge misstates the standard for analyzing foreseeability. General negligence law holds that negligence may be established where it is shown that by exercise of reasonable care, the defendant

might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected. The third sentence of the hindsight charge, however, instructs juries that liability may be premised only on those injurious results that are "probable and likely to happen." As such, it is inaccurate and misleading.

(Citations, punctuation and footnote omitted.) *Smith v. Finch*, supra, 285 Ga. at 711-712 (1). Because the charge is inaccurate and misleading, and because it "essentially instructed the jury to disregard appellants' expert testimony regarding the standard of care, the instruction was prejudicial, and the judgment below must be reversed." Id.

2. In Case No. A09A0056, Hudson argues that the trial court erred in denying his motion for directed verdict based on a Good Samaritan defense, in light of the "unexpected" testimony of one of Gilley's experts that Gilley's situation constituted a medical emergency.

Gilley's expert, Dr. John A. Ogden, testified at trial that Gilley's dislocated hip constituted an orthopedic emergency because it had to be treated within a six- to eight-hour window to restore blood flow and avoid future complications. As discussed earlier, he also testified that Hudson violated the standard of care by reducing the dislocation under local anesthesia, without adequate muscle relaxation, and without using a fluoroscope or live x-ray to determine whether the femoral head was displaced while reducing the dislocation.

Gilley's other expert, who was also his treating orthopedic surgeon, testified that if Hudson had told him he was going to attempt a closed reduction without general anesthesia or a fluoroscope, he would have advised Hudson to send Gilley to the surgeon's hospital for treatment instead. The expert testified that an adolescent hip requires a lot of force both to dislocate and to put back in place, and that the adolescent's growth plate on his femur is susceptible to damage in such a circumstance. This expert and one of Hudson's experts agreed that the time frame for treatment was six hours, and Hudson admitted that all the recommended practices were available when he treated Gilley.

The expert's description of Gilley's situation as an orthopedic emergency that had to be treated within six hours is not evidence that warranted the grant of a directed verdict on Hudson's Good Samaritan defense. It is not substantively different from the evidence we considered before on summary judgment in *Gilley v. Hudson*, 283 Ga. App. at 880, in which we held that a jury question

existed "as to whether Dr. Hudson provided Gilley with emergency care upon circumstances requiring immediate action." The trial court properly charged the jury regarding the defense, and did not err in denying Hudson's motion for a directed verdict or post-trial motions on his Good Samaritan defense.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JULY 7, 2009 —
RECONSIDERATION DENIED JULY 23, 2009 ▮▮▮▮▮▮▮▮▮

*Schierffius, Ballard, Still & Ayres, William L. Ballard, Rebecca C. Franklin, Alexander &˙Vann, George R. Lilly II*, for appellants.
*Coleman Talley, Wade H. Coleman, Gregory T. Talley, Edward F. Preston*, for appellees.