**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 4, 2025**

# In the Court of Appeals of Georgia

A24A1770. ZWEIGEL et al. v. NORTH ATLANTA OBSTETRICS & GYNECOLOGY, LLC et al.  DA-075

DAVIS, Judge.

Following a trial in this medical malpractice case, the jury returned a verdict in favor of the defendants. The plaintiffs now appeal from the judgment entered on the verdict, challenging the trial court's evidentiary rulings and jury instructions. For the reasons set forth below, we affirm.

"When a jury returns a verdict, . . . the evidence is to be construed in a light most favorable to the prevailing party with every presumption and inference in favor of sustaining the verdict." (Citation and punctuation omitted.) *Med. Center of Central Ga., Inc. v. Turner*, 372 Ga. App. 644, 647 (905 SE2d 858) (2024).

So viewed, the evidence at trial showed the following. On Friday, March 18, 2016, Elizabeth Zweigel was a healthy thirty-three-year-old woman with two children, including a three-month-old whom she was breastfeeding. The next day, she felt like she had a cold. She felt worse on Sunday morning and thought she may have the flu. At approximately 4:00 p.m. that day, she made a phone call to Dr. Stephen Rosenberg, who was the on-call doctor for North Atlanta Obstetrics & Gynecology, LLC. Her sister, who had been staying with her that weekend, joined the call with Dr. Rosenberg. Dr. Rosenberg was advised of her symptoms and told that she thought she had the flu, and he made a "working diagnosis" of the flu and prescribed flu medication.

Zweigel testified at trial that she did not remember what symptoms were reported to Dr. Rosenberg during the call. Zweigel's sister testified that she noticed that Zweigel had blue lips that Sunday afternoon and advised Dr. Rosenberg of the blue lips during the call. Dr. Rosenberg testified that while he had no recollection of the call, he was certain that he was not told that Zweigel had blue lips because: (1) blue lips would be indicative of a lack of oxygen and a medical emergency; (2) he would remember something so significant, which had never been reported to him in his

career; and (3) if he had been told about blue lips, he would not have prescribed flu medication but would have been required by the standard of care to advise Zweigel to seek emergency medical care. Zweigel's husband did not notice that she had blue lips on multiple video calls with her that Sunday, and he did not notice that she had blue lips when he arrived home late Sunday night. The defendants presented evidence at trial that if Zweigel had blue lips on Sunday afternoon, she would not have been alive the next morning.

Zweigel took the prescribed flu medication after her call with Dr. Rosenberg, but her condition continued to deteriorate. When Zweigel's husband returned home late that Sunday night, she had pale legs, leg pain, and difficulty walking and breathing. He drove her to the emergency room, where she was diagnosed with streptococcal pneumonia leading to sepsis, septic shock, multi-organ failure, and limb ischemia,[1] and she was treated with antibiotics and fluids. Zweigel was subsequently placed in a medically-induced coma and required arm and limb amputations.

Zweigel and her husband (hereinafter "the Plaintiffs") filed this medical malpractice action against Dr. Rosenberg and North Atlanta Obstetrics & Gynecology

---

[1] Ischemia occurs when tissues are damaged or die as a result of not receiving sufficient oxygen via the blood.

(hereinafter "the Defendants").[2] The Plaintiffs alleged that given the symptoms that Dr. Rosenberg was advised of during the call with Zweigel and her sister — including the most significant symptom of blue lips — the standard of care required that he advise her to seek emergency medical care. The Plaintiffs further alleged that the delay in treatment caused by Dr. Rosenberg's negligence led to Zweigel's injuries. The jury found in favor of the Defendants, the trial court entered judgment on the verdict, and the Plaintiffs filed this appeal.

1. During his cross-examination, Dr. Rosenberg responded negatively when the Plaintiffs' counsel asked if his hospital privileges had ever been suspended. The trial court sustained the Defendants' objection to this testimony on relevance grounds, struck the question and answer, and excused the jury. The Plaintiffs' counsel proffered two letters addressed to Dr. Rosenberg from the medical record committee at his hospital. One letter was dated March 18, 1997, and said: "As a result of your timely record completion for the past three months, your suspension from December 4, 1996 is now being considered inactive. We appreciate your continued compliance

---

[2] The Plaintiffs initially named as defendants Atlanta Women's Health Group, P. C., and Atlanta Women's Health Group II, LLC, but subsequently dismissed these entities.

with the Medical Staff Bylaws/Rules and Regulations." The other letter was dated February 25, 2000, and said: "As a result of your timely record completion for the past three months, your suspension from November 24, 1999 is now being considered inactive. We appreciate your continued compliance with the Medical Staff Bylaws/Rules and Regulations." Dr. Rosenberg testified that he did not know what the letters meant, but he was certain that his hospital privileges had never been suspended. The trial court affirmed its prior ruling, stating "I just do not find, given the chronology and the nature of this, that it is relevant, and even if it were, it is clearly more prejudicial than [probative] to the facts at issue here."

On appeal, the Plaintiffs argue that the trial court abused its discretion by prohibiting them from cross-examining Dr. Rosenberg about prior suspensions of his hospital privileges. We disagree.

"Control of the nature and scope of cross-examination of a witness is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *Latimore v. Dept. of Transp.*, 250 Ga. App. 360, 361 (1) (552 SE2d 439) (2001).

The Plaintiffs' only argument regarding why the prior suspensions of Dr. Rosenberg's hospital privileges were relevant apart from impeachment purposes is based on their theory that the suspensions were due to his failures in patient documentation and therefore they related to the question of his chart documentation and quality of care in the instant case. However, "as a general rule in all negligence actions, evidence of similar acts or omissions is not admissible." (Citation and punctuation omitted.) *Southwestern Emergency Physicians, P. C. v. Quinney*, 347 Ga. App. 410, 415 (1) (819 SE2d 696) (2018); see also OCGA § 24-4-404 (a) (pertinently providing that, in general, "[e]vidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion"); OCGA § 24-4-404 (b) (pertinently providing that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith"). "This is so because the issue to be tried is only the negligence or nonnegligence of the defendant at the time of the alleged negligent act, which must be determined by the circumstances surrounding that act and not by reputation of the alleged tortfeasor." (Citation and punctuation omitted.) *Quinney*, supra, 347 Ga. App. at 415 (1).

"A trial court has discretion to limit cross-examination into areas that are irrelevant or immaterial to the issues being tried." *Moody v. State*, 279 Ga. App. 440, 445 (5) (631 SE2d 485) (2006). Accordingly, evidence that Dr. Rosenberg allegedly had prior issues with patient documentation was not admissible to show that he had issues with documenting Zweigel's condition, and the trial court did not abuse its discretion in excluding evidence regarding such prior issues. See *Hand v. South Ga. Urology Center, P. C.*, 332 Ga. App. 148, 157-158 (3) (769 SE2d 814) (2015) (trial court did not abuse its discretion in prohibiting cross-examination of defendant regarding the past suspension of his medical license because such evidence was irrelevant to whether he breached the standard of care), disapproved on other grounds, *Phillips v. Harmon*, 297 Ga. 386, 398 (II) n.10 (774 SE2d 596) (2015).

The Plaintiffs assert that rebutting Dr. Rosenberg's testimony that his hospital privileges had never been suspended was crucial to the question of his credibility and character for truthfulness. As an initial matter, the trial court struck Dr. Rosenberg's testimony that his privileges had never been suspended, thereby eliminating any testimony to rebut, and the Plaintiffs do not challenge that ruling. And even if the Plaintiffs wished to rebut the stricken testimony, the trial court did not err in

prohibiting them from doing so. OCGA § 24-6-621 provides that "[a] witness may be impeached by disproving the facts testified to by the witness." However, this statute "does not provide a party with an unlimited ability to impeach a witness by contradiction." *Scott v. State*, 309 Ga. 764, 770 (3) (c) (848 SE2d 448) (2020). Specifically, "[a] party may not use extrinsic evidence to impeach a witness by contradiction on a matter collateral to the material issues at trial." Id.; see also *Corley v. State*, 308 Ga. 321, 325 (3) (840 SE2d 391) (2020) ("[I]t is within a trial court's discretion to determine if a party is improperly attempting to use extrinsic evidence to impeach a witness by contradiction under OCGA § 24-6-621 on a matter collateral to the relevant issues at trial.").

As discussed above, whether Dr. Rosenberg's hospital privileges had previously been suspended almost 20 years before the incident was purely collateral to the issue of whether his treatment of Zweigel violated the standard of care. Therefore, the trial court did not abuse its discretion in preventing the Plaintiffs from using the letters regarding the alleged prior suspensions as extrinsic evidence to rebut any testimony that his privileges had not been suspended. See *Hand*, supra, 332 Ga. App. at 157-158 (3) (even if defendant testified untruthfully that his medical practice had never been

interrupted, he could not be impeached on this issue because it related to a wholly immaterial matter); *Moody*, supra, 279 Ga. App. at 444-445 (5) (trial court did not abuse its discretion in preventing the defendant from attempting to impeach the victim's testimony regarding her work history because such history was irrelevant to the issues in the case).

2. The Plaintiffs called Dr. Preston Flanigan, a vascular surgeon, to testify as an expert. Dr. Flanigan testified that, usually, he was not responsible for diagnosing sepsis or septic shock, he did not treat such conditions, and he was called in to perform limb amputations once patients were diagnosed with such conditions and limb ischemia. The Defendants did not object to Dr. Flanigan testifying as an expert in vascular surgery, limb ischemia, or amputations, but they objected to him testifying as an expert in other matters. Dr. Flanigan then testified on voir dire that he had not taught about sepsis or septic shock and had not published any articles or been involved in any studies about such conditions. The trial court ruled that while Dr. Flanigan could testify about whether Zweigel's outcome would have been different if a vascular surgeon had been called in earlier for a possible amputation, he could not testify about when she developed sepsis or septic shock prior to her actual diagnosis of such

conditions or whether earlier treatment of such conditions would have resulted in a different outcome.

On appeal, the Plaintiffs argue that the trial court abused its discretion in limiting Dr. Flanigan's testimony because he had sufficient knowledge and experience in diagnosing and treating patients with sepsis and septic shock to testify about the timing of the onset of such conditions and their impact on Zweigel's outcome. We disagree.

"The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion." *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006).

"Under OCGA § 24-7-702, it is the role of the trial court to act as a gatekeeper of expert testimony. In this role, the trial court assesses both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." (Citations and punctuation omitted.) *Emory Univ. v. Willcox*, 355 Ga. App. 542, 543 (1) (844 SE2d 889) (2020).

The usual standard for the admissibility of expert testimony is found in OCGA § 24-7-702 (b). *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015). Under Rule 702 (b),

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
>
> > (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (2) The testimony is based upon sufficient facts or data;
> >
> > (3) The testimony is the product of reliable principles and methods; and
> >
> > (4) The expert has reliably applied the principles and methods to the facts of the case.

Here, the trial court did not abuse its discretion in concluding that Dr. Flanigan was not qualified to testify about when Zweigel developed sepsis or septic shock prior to her actual diagnosis of such conditions or about whether earlier treatment of such conditions would have resulted in a different outcome. Significantly, Dr. Flanigan

11

admitted that he usually was not responsible for diagnosing or treating sepsis or septic shock and that his usual involvement began when a septic patient potentially needed amputations. And Dr. Flanigan did not otherwise show how he had sufficient knowledge about diagnosing or treating sepsis or septic shock. Accordingly, we will not interfere with the trial court's decision to limit his testimony regarding such conditions.

Furthermore, even assuming that the trial court's decision to limit Dr. Flanigan's testimony was error, any such error was harmless because his testimony on the issues of timing and causation would have been cumulative of the testimony provided by Plaintiffs' other experts. See *Haskins v. Ga. Neurosurgical Inst., P. C.*, 355 Ga. App. 781, 785-786 (4) (845 SE2d 770) (2020) (exclusion of expert testimony harmless where it was "merely cumulative of trial testimony already given" by another expert).

In this case, Plaintiffs presented testimony from two other causation experts whose opinions covered essentially the same subject matter that was excluded from Dr. Flanigan's testimony. Dr. Richard Berg, an infectious disease specialist, testified about the onset and timing of Zweigel's many problems (including her infection,

sepsis, septic shock, and the cascade of problems that followed) and opined that an earlier diagnosis and treatment would have significantly changed her outcome. Dr. Ian Newmark, a critical care specialist, testified similarly and offered his opinion that, had Zweigel been evaluated at the emergency room at 5:00 p.m. on Sunday, March 20, and treated for sepsis, "she would not have gone on to develop septic shock . . . and she would not have required amputations." "Thus, even if the exclusion of [Dr. Flanigan's] proffered testimony was error, it was merely cumulative and provides no basis for reversal." *Harbin v. Roberts*, 305 Ga. App. 107, 109-110 (2) (699 SE2d 36) (2010).

3. Next, the Plaintiffs argue that the trial court erred in giving the following charge to the jury:

> A person is not required to guard against incidents which are not reasonably to be expected and which would not occur except under exceptional circumstances. If you find from all of the evidence that the incident described in this case came about as the result of exceptional circumstances which could not be reasonably foreseen or expected by the defendants, then the defendants cannot be held responsible for the occurrence.

The Plaintiffs assert that the charge was confusing and misleading because the correct principle of law is that a defendant in a negligence case need not have contemplated or been able to anticipate the precise injuries sustained by the plaintiff, and it is sufficient if the defendant should have foreseen that some injury would result from his negligence. While we have serious concerns about the use of the words "exceptional circumstances" in this jury charge (specifically its inclusion of the words "and which would not occur except under exceptional circumstances" in the first sentence and the word "exceptional" in the second sentence), we nonetheless conclude that the giving of this charge did not deprive Plaintiffs of a fair trial and does not warrant reversal. Having reached this conclusion, however, we caution trial courts about why the giving of this charge in medical malpractice cases (with its reference to "exceptional circumstances") is problematic and should be avoided in future cases. See *Beach v. Lipham*, 276 Ga. 302, 305-306 (2)-(3) (578 SE2d 402) (2003) (rejecting a challenge to a jury instruction in a medical malpractice case but concluding that the "wording of the . . . charge needs to be revised" to avoid confusing jurors in future

cases; "The fact that the instruction is a correct statement of law does not mean that it is the clearest statement of the law, especially for jurors without legal training.").[3]

"In reviewing a challenge to the trial court's jury instructions, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case." (Citation omitted.) *Russell v. State*, 309 Ga. 772, 782 (3) (a) (848 SE2d 404) (2020). "It is axiomatic that a jury charge . . . must be adjusted to the evidence, apt, and a correct statement of the applicable law. And because the review of allegedly erroneous jury instructions is a legal question, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citations and punctuation omitted.) *Quinney*, supra, 347 Ga. App. at 419-420 (3).

Defendants argue that our Court has approved similar charges, most recently in 2010. See *Thompson v. Princell*, 304 Ga. App. 256, 260-262 (b) (696 SE2d 91) (2010) (approving "exceptional circumstances" charge in medical malpractice case); *Jackson v. Rodriquez*, 173 Ga. App. 211, 214-215 (5) (325 SE2d 857) (1984) (same). As

---

[3] For the reasons explained in this Opinion, it is the charge's reference to "exceptional circumstances" that is problematic in medical malpractice cases. We see no problem with the charge being given in such cases if that reference is removed. This could easily be done by removing the words "and which would not occur except under exceptional circumstances" in the first sentence and the word "exceptional" in the second sentence.

Defendants argue, these decisions stem from the principle that "'a man's responsibility for his negligence must end somewhere,' so the law does not expect people to watch out for things that are 'only remotely and slightly possible.'" See *Jackson*, supra, 173 Ga. App. at 214 (5). It is beyond dispute that the law rightfully imposes limitations on one's responsibility for the consequences of his negligence. However, that does not mean that, in the field of medicine, medical providers are relieved from the responsibility of guarding against outcomes that are "only remotely and slightly possible." Our Supreme Court expressly rejected this notion in 2009 when it disapproved of a jury charge stating this in the medical malpractice context.

In *Smith v. Finch*, 285 Ga. 709 (681 SE2d 147) (2009), our Supreme Court considered the following jury charge given in a lawsuit involving a health provider's failure to correctly diagnose a child's "relatively rare" case of Rocky Mountain Spotted Fever:

> In a medical malpractice action, a defendant cannot be found negligent on the basis of an assessment of a patient's condition that only later, in hindsight, proves to be incorrect as long as the initial assessment was made in accordance with reasonable standards of medical care. In other words, the concept of negligence does not include hindsight. *Negligence*

> *consists of not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible.*

(Emphasis supplied.) Id. at 710. The final sentence of this charge serves as the basis for the "exceptional circumstances" charge given in this case, as shown by the holdings of *Thompson* and *Jackson* and as argued by Defendants. The problem with this argument and the reason we reject it here is that the Supreme Court held that the final sentence of the above charge was "plainly inconsistent with the medical decision-making process, which often requires the consideration of unlikely but serious consequences in the diagnosis and treatment of disease, and is generally inconsistent with the standard for foreseeability in our negligence law." Id. at 710 (1). The charge under consideration in *Smith* essentially instructed the jury "that liability may be premised only on those injurious results that are 'probable and likely to happen.' As such, it is inaccurate and misleading." (Footnote omitted.) Id. at 712 (1).

In another decision issued contemporaneously with *Smith*, a patient brought a medical malpractice action after she was diagnosed with a rare and serious bone marrow disease, alleging that her doctor had inappropriately prescribed an anti-convulsive drug and was negligent in failing to conduct blood count monitoring to

detect any potential adverse reactions to the drug. See *Condra v. Atlanta Orthopaedic Grp., P.C.*, 285 Ga. 667, 667 (681 SE2d 152) (2009). The trial court gave the same jury instruction as in *Smith,* the jury returned a defense verdict, and our Supreme Court disapproved of the instruction just as it had in *Smith*. Id. at 672 (2). *Smith* was then cited by our Court in a 2009 medical malpractice case to disapprove the same jury instruction. See *Gilley v. Hudson*, 299 Ga. App. 306, 308-309 (1) (682 SE2d 627) (2009) (jury instruction, which provided in part that "negligence consists of not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely or slightly possible," was erroneous and warranted reversal of judgment).

For the reasons stated above, it is evident that Defendants' attempt to justify the "exceptional circumstances" language in the challenged jury charge on the basis that medical providers are not required to guard against outcomes which are "only remotely or slightly possible" is unpersuasive and contrary to Supreme Court precedent. For that reason, we disapprove of the inclusion of the "exceptional circumstances" language in this context and caution trial courts not to include it in their instructions to the jury in medical malpractice cases. However, the fact that we

find this jury charge to be potentially confusing and problematic does not mandate reversal where the charge as a whole substantially covers the issues to be decided by the jury and does not unfairly prejudice the complaining party. Such is the case here.

"[I]n order for a trial court's jury instruction to constitute reversible error, the party challenging the instruction must establish that the instruction was both legally erroneous and harmful." (Citation and punctuation omitted.) *West v. Breast Care Specialists, LLC*, 290 Ga. App. 521, 523 (1) (659 SE2d 895) (2008). "Challenged segments cannot be considered in isolation to ascertain whether the charge is accurate and fair and worked no prejudice to the complaining party." (Citation and punctuation omitted.) *Sagon v. Peachtree Cardiovascular & Thoracic Surgeons, P.A.*, 297 Ga. App. 379, 381 (677 SE2d 351) (2009). "If the charge as a whole substantially covered the issues to be decided by the jury, we will not disturb a verdict supported by the evidence simply because the charge could have been clearer or more precise." *Lee v. Swain*, 291 Ga. 799, 800 (2) (a) (733 SE2d 726) (2012). See also *Chesser v. Wallace*, 200 Ga. App. 567, 567 (2) (408 SE2d 814) (1991) (although charge on proximate cause was incorrect in isolation, charge went on to correctly and fully express the applicable law).

Here, while the challenged language in the jury charge is based upon a principle that has been expressly disapproved of by our Supreme Court, that language nonetheless differs from the language disapproved of by *Smith* and its progeny, and it is that difference that distinguishes this case from the holdings of those cases. In particular, the first sentence of the charge instructs the jury that a person is not required to guard against an incident that is both "not reasonably to be expected" *and* "which would not occur except under exceptional circumstances." Similarly, the second sentence instructs the jury that such an incident must be "the result of exceptional circumstances *which could not be reasonably foreseen* or expected by the defendants." (Emphasis supplied.) While the "exceptional circumstances" language is confusing and problematic for the reasons explained above and for that reason should be avoided by trial courts in similar future medical malpractice cases, the charge's inclusion of the concept of reasonable foreseeability makes the charge significantly better than the charge rejected in *Smith* and its progeny and saves this case from reversal. Moreover, the "exceptional circumstances" charge was given after the following pattern jury instruction:

> A defendant may be held liable for an injury when that person commits a negligent act that puts other forces in motion or operation resulting in

20

the injury when such other forces are the natural and probable result of the act that the defendant committed and that reasonably should have been foreseen by the defendant. When the injuries could not reasonably have been foreseen as the natural, reasonable, and probable result of the original negligent act, then there can be no recovery. If the chain reaction that resulted from the defendant's alleged negligence, if any, meets the above tests, then the plaintiff may recover.

Thus, even though we take issue with the challenged jury charge's reference to "exceptional circumstances," we conclude that when read as a whole, the jury instructions adequately covered the issues to be decided by the jury and did not constitute harmful error.

4. Lastly, the Plaintiffs argue that the trial court erred in refusing to provide two requested jury charges. First, the Plaintiffs assert that the court should have charged the jury that: "The relationship between a physician and his patient is one of trust and confidence. Thus, a patient has the right to believe what she is told by her medical doctor about her condition." Second, the Plaintiffs assert that the court should have charged that: "Physicians are required to inform themselves of their patient's condition by proper inquiry such as would ordinarily be made under similar circumstances and, upon failure to do so, they are not relieved of liability by error in

judgment for a resulting injury." We conclude that the trial court did not err in refusing to give the requested charges.

"[A] refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge." (Citation and punctuation omitted.) *Hand*, supra, 332 Ga. App. at 155 (2).

(a) The trial court did not err in refusing to give the requested charge on the relationship of trust and confidence between a physician and his patient. Such a charge was not adjusted to the pleadings and evidence. The Plaintiffs' claims were all based on the allegation that Dr. Rosenberg, despite being advised of Zweigel's symptoms, failed to instruct her to seek emergency medical care.[4] Dr. Rosenberg conceded at trial that Zweigel was entitled to rely on his advice, and the Defendants did not argue otherwise, instead focusing their defense on their arguments that Zweigel did not inform Dr. Rosenberg of blue lips and that earlier treatment would not have avoided her injuries.

---

[4] Indeed, the parties agreed that the trial court would instruct the jury that this allegation regarding Dr. Rosenberg's failure to instruct Zweigel to seek emergency medical care was the only violation of the standard of care asserted by the Plaintiffs.

(b) The trial court did not err in refusing to give the requested charge on a physician's obligation to inform himself of his patient's condition by proper inquiry. Such a charge was not adjusted to the pleadings and evidence. Again, the Plaintiffs' claims were all based on the allegation that Dr. Rosenberg, despite being advised of Zweigel's symptoms, failed to instruct her to seek emergency medical care, as opposed to any allegation that he failed to inquire into her symptoms.

For the foregoing reasons, we affirm the final judgment in favor of the Defendants.

*Judgment affirmed. Markle and Land, JJ., concur.*