A91A1708. AUSTIN et al. v. KAUFMAN et al.
(417 SE2d 660)

POPE, Judge.

Jessie Mae Austin, a 60-year-old woman, underwent a routine lumbar diskectomy for correction of a herniated disc at the L4-L5 level. During the course of the operation, defendant Dr. G. Phillip Kaufman severed the patient's left iliac artery and extensively injured the left iliac vein. Mrs. Austin began hemorrhaging during surgery, and after several unsuccessful surgical attempts were undertaken to repair the damage to her vascular system, Mrs. Austin died. This medical malpractice action was brought against Dr. Kaufman and Cobb Neurological Associates, P.C., by the decedent's husband Jessie R. Austin, individually and in a representative capacity for the couple's nine children, and Carolyn Austin, administratrix of the decedent's estate. The case was tried before a jury and a verdict in favor of plaintiffs was returned. Defendants moved for a judgment n.o.v. and, in the alternative, for a new trial. The trial court granted both motions, and plaintiffs appeal.

1. In its order granting defendants' motion for judgment n.o.v., the trial court determined that plaintiffs failed to offer expert testimony establishing negligence on the part of Dr. Kaufman; rather plaintiffs' expert witness merely inferred negligence based on the fact that an injury to Mrs. Austin occurred during the procedure. The trial court further determined that because plaintiffs' expert witness failed to set forth with particularity how and in what way Dr. Kaufman deviated from the parameters of standard conduct for this procedure (i.e., whether he used the wrong surgical instrument, rushed the procedure, used the wrong surgical technique, etc.), the expert witness' conclusion that Dr. Kaufman was negligent in this instance could only have been based upon the fact that an injury resulted; that is, res ipsa loquitur.

Res ipsa loquitur is not applicable in medical malpractice cases in Georgia. "In a medical malpractice case, 'the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case. "The . . . jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill." ' [Cits.]" *Horney v. Lawrence,* 189 Ga. App. 376, 377 (2) (375 SE2d 629) (1988). Expert testimony must also set forth how or in what way the defendant deviated from the parameters of the acceptable professional conduct. *Loving v. Nash,* 182 Ga. App. 253 (1) (355 SE2d 448) (1987).

During the trial of the case, plaintiffs' expert witness testified on direct examination that, during a procedure of this kind, there is an implied requirement that the surgeon confine himself to the operative field and not stray from the field of surgery into a body cavity where he has no business being. From this testimony, the parameters of acceptable professional conduct for this procedure were clearly established — a doctor should not stray from the operative field and enter the abdominal cavity where he can injure the patient's vascular system. The expert witness also testified that in his opinion Dr. Kaufman deviated from the applicable standard of care.

The trial court erred in holding that plaintiffs improperly relied on the doctrine of res ipsa loquitur to establish negligence in this case. Plaintiffs did not themselves raise the doctrine to establish an inference of negligence in this case. Cf. *Young v. Yarn,* 136 Ga. App. 737 (2) (222 SE2d 113) (1975). Rather, plaintiffs produced an expert witness who testified to the parameters of acceptable professional conduct for this procedure; that is, a surgeon should not leave the surgical field of operation, enter an abdominal cavity, or lacerate an iliac artery or vein during the course of this procedure. Furthermore, in this case there is no dispute concerning whether Mrs. Austin's injuries or subsequent death were caused by Dr. Kaufman. Cf. *Fox v. Co-*

*hen,* 160 Ga. App. 270 (287 SE2d 272) (1981). The sole issue is whether Dr. Kaufman's act of injuring Mrs. Austin's iliac vein and artery constituted actionable negligence. Finally, other testimony was presented, particularly the cross-examination of Dr. Kaufman, from which a jury could determine that defendant negligently performed this procedure. Cf. *Hayes v. Brown,* 108 Ga. App. 360 (3) (133 SE2d 102) (1963).

"Negligence, like any other fact, may be proved by circumstantial evidence as well as by direct testimony. Although expert opinion testimony may be required in a medical malpractice case to prove the applicable standard of care and a breach thereof, we are aware of no rule which prevents circumstantial evidence from being used to prove those facts upon which the expert relies in formulating his opinion that such negligence occurred. It is for the jury to determine whether the facts upon which the expert bases his opinion do exist and, if so, whether the expert's opinion that those facts constituted medical malpractice should be accepted. In determining medical malpractice, the jury may consider *all* the attendant facts or circumstances which may throw light on the ultimate question. . . . And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by negligence." (Emphasis in original; citations and punctuation omitted.) *Packer v. Gill,* 193 Ga. App. 388, 390 (5) (388 SE2d 338) (1989). After reviewing the entire transcript of the trial, particularly the cross-examination of Dr. Kaufman, we do not agree with the trial court's conclusion that the evidence in this case demanded, as a matter of law, a determination that Dr. Kaufman was not negligent in performing this procedure. See *Horney v. Lawrence,* supra at 377.

The trial court also concluded that because Dr. Kaufman and the other expert witnesses testifying on his behalf agreed that injury to the iliac vein and artery is a recognized complication of this procedure, Dr. Kaufman could not, as a matter of law, have been negligent in causing Mrs. Austin's injury. In support of this position, the trial court also referred to plaintiffs' expert witness' testimony on cross-examination, in which he stated he could not teach defendant how to avoid the injury, this injury could be caused by a careful neurosurgeon, and he had never caused such an injury because he had been lucky. Yet, the plaintiffs' expert witness, Dr. Kaufman, and one of defendants' expert witnesses indicated that this kind of injury to the vascular system was extremely rare, and in most instances, a lumbar diskectomy is performed without any injury occurring to a patient's iliac vein or artery. This expert testimony created a factual dispute as to whether Mrs. Austin's injury and death were merely expected complications of the procedure which under any set of circumstances

could not have resulted from the negligence of Dr. Kaufman, or whether her injury resulted, in this instance, from Dr. Kaufman's failure to conform to the applicable standard of care for this procedure. See *Messex v. Lynch,* 255 Ga. 208, 210 (336 SE2d 755) (1985); *Horney v. Lawrence,* supra at 378.

"[A] motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts." (Citations and punctuation omitted.) *Famiglietti v. Brevard Medical &c.,* 197 Ga. App. 164 (1) (397 SE2d 720) (1990). We cannot say that the evidence demanded a verdict for defendants in this instance. Accordingly, the trial court's grant of defendants' motion for judgment n.o.v. was in error.

2. We next address the trial court's grant of a new trial to defendants. " 'While ordinarily the first grant of a new trial will not be disturbed by this court, where . . . the first grant of a new trial is based on a special ground involving a question of law, the trial court's order is reviewable on appeal.' [Cit.]" *Famiglietti v. Brevard Medical &c.,* supra at 169. Because defendants' motion for new trial raised eight specific allegations of error authorizing the grant of a new trial, none of which was the general grounds, we conclude that the trial court's order granting a new trial in this case is reviewable by this court.

We reject defendants' argument that the trial court's order impliedly contained a grant of new trial on the general grounds. "In all civil cases in which a new trial is granted, if the grant of a new trial is based on the discretion of the judge, the judge shall set forth by written order the reason or reasons for the exercise of his discretion." OCGA § 5-5-51. Because the trial court's order contains no reference to the reasons for the exercise of its discretion, we must conclude that a new trial was granted on the special grounds raised by defendants. Thus, we will review each of the special grounds raised below.

3. Defendants first argued the trial court erred in submitting evidence to the jury in the form of res ipsa loquitur. In accordance with our holding in Division 1 of this opinion, this argument is without merit.

4. Defendants next contended the trial court erred by allowing testimony concerning the issue of informed consent and indicating that Dr. Kaufman was required to disclose to Mrs. Austin the risks of this procedure. The challenged testimony was admitted during cross-

examination of Dr. Kaufman, in response to his assertion on direct examination that injury to the iliac veins and arteries is a known risk of the surgery performed on Mrs. Austin. Plaintiffs' counsel cross-examined Dr. Kaufman at great length as to whether the defendant had, in fact, explained this particular risk to Mrs. Austin (i.e., injury to the vascular system possibly resulting in death), and about his notation on Mrs. Austin's medical records that he had discussed with the patient the risks, goals and alternatives of treatment "in depth."

Defendants asserted that at the time of Mrs. Austin's surgery, the informed consent doctrine was not a viable principle of law in Georgia because the general rule at that time was that an executed consent form was conclusively presumed to be valid. (*Holbrook v. Schatten,* 165 Ga. App. 217, 218 (299 SE2d 128) (1983); *Young v. Yarn,* supra at 738). Consequently, defendants argued, any testimony touching upon the issue of informed consent was improper. "If evidence can be duly admitted under any legitimate theory, it should be admitted even though it does not qualify for admission under one or more other evidentiary theories; that is, evidence should be admitted if it is admissible for any purpose. [Cits.]" *Weaver v. Ross,* 192 Ga. App. 568, 570 (1) (386 SE2d 43) (1989). Since the testimony in question was not offered to prove the elements of a cause of action based upon informed consent, but rather to impeach Dr. Kaufman's assertion that the complications suffered by Mrs. Austin were a known risk of the procedure, the trial court did not err in allowing this evidence. Cf. *Padgett v. Ferrier,* 172 Ga. App. 335 (1) (323 SE2d 166) (1984).

5. Defendants also contended that the trial court erred by allowing testimony which put before the jury the issue of fraudulent misrepresentation. Mrs. Austin's surgery occurred on August 24, 1987, which was prior to the effective date of OCGA § 31-9-6.1. At that time, a duly executed consent to surgery which disclosed the general terms of the treatment given was "conclusively presumed to be a valid consent in the absence of fraudulent misrepresentations of material facts in obtaining the same." OCGA § 31-9-6 (d). After Dr. Kaufman testified on direct examination that injury to the iliac veins and arteries is a recognized risk of the procedure performed on Mrs. Austin, plaintiffs' counsel cross-examined Dr. Kaufman regarding his notation on Mrs. Austin's medical records that he had discussed with the patient the risks, goals and alternatives of treatment "in depth." Mrs. Austin's daughter was called as a witness to testify that she had been present during Mrs. Austin's conference with Dr. Kaufman and had not heard him discuss the risk of bleeding and death with her mother. In support of their motion for new trial, defendants sought to persuade the trial court, based on *Kelly v. Reid,* 186 Ga. App. 89 (366 SE2d 315) (1988), that any evidence on the subject of fraudulent misrepresentation was improper because Georgia law imposed no duty on

Dr. Kaufman to inform Mrs. Austin of the risks of this procedure. We conclude the trial court did not err by allowing this testimony. The testimony in question was not offered to prove fraudulent misrepresentation under OCGA § 31-9-6 (d), but rather to impeach Dr. Kaufman's assertion that the risks of this procedure were discussed with the patient "in depth." *Weaver v. Ross,* supra at 570.

6. Defendants also claimed the trial court erred in refusing to allow defendants during trial to produce and refer to the medical literature upon which Dr. Kaufman based his expert opinion that he had not negligently performed this procedure. Defendants contended that the medical literature should have been admissible as evidence. "An expert may testify as to his opinions derived from a book, [cit.], and his credibility may be tested by reference to a standard treatise in his field of expertise. [Cit.]" *Dean v. State,* 250 Ga. 77, 82 (4) (295 SE2d 306) (1982). However, medical articles are not themselves admissible as evidence. *Stephen W. Brown Radiology Assoc. v. Gowers,* 157 Ga. App. 770 (14) (278 SE2d 653) (1981). Thus, the trial court did not err in excluding this evidence.

7. Defendants next argued the trial court erred in allowing expert testimony from the medical examiner who signed Mrs. Austin's death certificate. The medical examiner had not been identified by plaintiffs as an expert witness during discovery but had been identified as an expert witness on the pretrial order. OCGA § 9-11-26 (b) (4) (A) (i) requires a party to identify during discovery each expert who will appear at trial, provide a summary on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. However, this court has held that the requirements of this Code section apply only to experts whose knowledge of the facts and opinions held were acquired or developed in anticipation of litigation or for trial, and not to an expert witness who is in fact an actor or observer of the subject matter of the suit. *Candler General Hosp. v. Joiner,* 180 Ga. App. 455 (2) (349 SE2d 756) (1986). The medical examiner in this case, by virtue of signing Mrs. Austin's death certificate, was an actor or observer of the subject matter of the suit. Consequently, the trial court did not err in allowing his testimony.

8. Defendants also raised as error the trial court's refusal to give defendants' requested charges 12, 13, 14 and 17. However, we find that each of these requests was adequately covered by the court in its own charge to the jury. *Skipper v. Dept. of Transp.,* 197 Ga. App. 634 (5) (399 SE2d 538) (1990). Accordingly, the trial court did not err by failing to give defendants' requested charges in the exact language requested.

9. Defendants also urged the trial court to grant a new trial because the trial court included plaintiffs' request to charge concerning

fraudulent misrepresentation at the end of the charge to the jury. The record indicates that defendants submitted a request to charge that portion of OCGA § 31-9-6 (d) which provides that a physician does not have a duty to disclose to his patient the risks of treatment, but only the general terms of treatment. Plaintiffs' disputed request to charge requested the trial court to charge the remaining portion of OCGA § 31-9-6 (d): "If a physician undertakes to warn the patient of the risks of the proposed procedure in response to a patient's inquiry, he is required to be truthful and accurate. A consent for surgical treatment is not valid if it was obtained by fraudulent misrepresentation of fact." Because plaintiffs sought recovery against defendants in negligence and not battery or fraudulent misrepresentation, defendants argued that the inclusion of this charge and its placement at the end of the court's charge were extremely prejudicial to defendants. We agree.

" 'A charge which injects into the case and submits for the jury's consideration issues not made by the pleadings or the evidence tends to confuse the jury as to the true issue in the case, is probably harmful to [defendants], and is error requiring the grant of a new trial.' [Cit.]" (Citations and punctuation omitted.) *McCoy v. Alvista Care Home,* 194 Ga. App. 599, 601 (391 SE2d 419) (1990). Plaintiffs in this case did not initially allege a cause of action for battery or fraudulent misrepresentation and were not permitted by the trial court to amend their pleadings during trial to include these claims. Yet, the trial court's charge on informed consent and fraudulent misrepresentation clearly presented those issues for jury determination. In the absence of limiting instructions by the trial court explaining that the only issue before the jury for consideration was whether or not defendants were negligent, "[we] cannot say that charging the jury concerning [OCGA § 31-9-6 (d)] did not confuse them as to whether the issue[s] of [informed consent and fraudulent misrepresentation were also] to be considered by them." *Koppar Corp. v. Robertson,* 186 Ga. App. 856, 858 (1) (368 SE2d 807) (1988). See also *Hopkins v. First Union Bank of Savannah,* 193 Ga. App. 109 (2) (387 SE2d 144) (1989). Thus, the trial court's charge on both portions of OCGA § 31-9-6 (d) was error, and the trial court's grant of a new trial on this ground was proper.

10. Defendants lastly argued the trial court erred because the jury verdict form did not contain special interrogatories on the issues of fraudulent misrepresentation and informed consent. In Division 9 of this opinion, we held that the issues of informed consent and fraudulent misrepresentation were improper for jury consideration. Consequently, the trial court did not err by failing to include special interrogatories addressing these issues on the jury verdict form.

*Judgment affirmed in part and reversed in part. Birdsong, P. J.,*

*and Cooper, J., concur.*

Decided February 25, 1992 —
Reconsideration denied April 2, 1992 —

*Davis, Gregory & Christy, Hardy Gregory, Jr., The Malone Firm, Thomas W. Malone, Baker & Chambers, Eugene B. Chambers, Jr.,* for appellants.

*Alston & Bird, Bernard Taylor, Lori G. Cohen, G. Conley Ingram, Earle B. May, Jr.,* for appellees.