A93A0827. KAPSCH et al. v. STOWERS et al.

(434 SE2d 539)

POPE, Chief Judge.

Plaintiffs/appellees Marjorie and Thomas Stowers filed a medical malpractice and loss of consortium action against defendants Donald M. Kapsch, M. D. and Peachtree General & Vascular Surgical Group, P. C., after Marjorie Stowers was allegedly injured during an operation performed by Dr. Kapsch. The jury returned a verdict for plaintiffs, and defendants filed a motion for j.n.o.v., or in the alternative, for new trial. The trial court denied defendants' motions and they filed the present appeal to this court.

1. Defendants first contend the trial court erred in denying their motions for directed verdict and for j.n.o.v. because the record shows that plaintiffs improperly relied on the doctrine of res ipsa loquitur to prove their medical malpractice claim and because plaintiffs' expert witnesses failed to state with particularity how Marjorie Stowers' (hereafter plaintiff) injury occurred.

"Res ipsa loquitur is not applicable in medical malpractice cases in Georgia. 'In a medical malpractice case, "the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case. 'The . . . jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill.' " (Cits.)' *Horney v. Lawrence,* 189 Ga. App. 376, 377 (2) (375 SE2d 629) (1988). Expert testimony must also set forth how or in what way the defendant deviated from the parameters of the acceptable professional conduct. *Loving v. Nash,* 182 Ga. App. 253 (1) (355 SE2d 448) (1987)." *Austin v. Kaufman,* 203 Ga. App. 704, 705 (1) (417 SE2d 660) (1992).

The record in this case shows that Dr. Kapsch performed a left subclavian bypass and left carotid endarterectomy on plaintiff in order to relieve blockages in her subclavian artery and left internal carotid artery. The day following the surgery plaintiff reported pain,

loss of sensation and loss of use in her left neck, shoulder and arm. Dr. Kapsch referred plaintiff to Dr. Joseph Barnett, a neurological surgeon, for diagnosis and treatment. After plaintiff's symptoms did not abate over time, Dr. Barnett performed an exploratory operation which, according to Dr. Barnett's deposition testimony at trial, revealed scarring and a "kink" in the upper trunk of plaintiff's left brachial plexus, a network of nerves running out of the spinal column to the arm.

Defendants do not dispute the evidence shows plaintiff suffered an injury to the left brachial plexus, but argue that plaintiffs' experts relied on the fact of the injury alone to establish defendants' negligence. Plaintiffs presented expert testimony from three doctors as to defendants' negligence in this case. Dr. Barnett testified on direct examination that although the procedures performed by Dr. Kapsch were successful, the failure to protect the brachial plexus from injury was a deviation from the standard of care. Dr. Barnett opined that the "kink" he observed in the trunk of the brachial plexus "was most likely due to instrumentation in that area and most likely due to retraction as may have been necessary to expose other structures." Dr. McKoy Rose testified that it is "unacceptable" for an injury to occur to the brachial plexus during the type of surgery performed here, and that the injury plaintiff suffered in this case is not a "risk" of the procedure. Dr. Rose also testified that based on the type of kink observed in the nerve it was his opinion that pressure, most likely from a retractor, had been placed on the nerve during the operation and that there had been a deviation from the standard of care in this case. Dr. Sheldon Burman gave similar testimony. He testified that this type of injury was "an avoidable complication" which should never occur. Dr. Burman further testified that the injury was due to direct trauma, probably from a retractor, which occurred while the patient was on the operating table.

We find no error in the denial of defendants' motions for directed verdict and j.n.o.v. Plaintiffs presented expert testimony that the scarring and "kink" in the brachial plexus was not a usual or accepted risk of the type of procedure performed here, that such an injury was the result of some sort of trauma to the nerve during the operation, and that the surgeon's failure to protect the nerve from injury during the procedure constitutes a deviation from the applicable standard of care. Moreover, although it is true, as defendants contend, that plaintiffs' experts could not be certain that the injury was caused by the improper placement of a retractor during the procedure, and that Dr. Kapsch and the assisting surgeon testified and denied that a retractor was placed on the nerve during the operation, the expert testimony was clear that a "direct trauma" to plaintiff's brachial plexus had occurred while plaintiff was on the operating table, and that based on

the type of injury observed, it was most likely caused by the improper placement of a retractor during the operation. Cf. *Loving v. Nash*, supra.

" 'Negligence, like any other fact, may be proved by circumstantial evidence as well as by direct testimony. Although expert opinion testimony may be required in a medical malpractice case to prove the applicable standard of care and a breach thereof, we are aware of no rule which prevents circumstantial evidence from being used to prove those facts upon which the expert relies in formulating his opinion that such negligence occurred. It is for the jury to determine whether the facts upon which the expert bases his opinion do exist and, if so, whether the expert's opinion that those facts constituted medical malpractice should be accepted. In determining medical malpractice, the jury may consider *all* the attendant facts or circumstances which may throw light on the ultimate question. . . . And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by negligence.' " *Austin v. Kaufman*, 203 Ga. App. at 706.

" '[A] motion for judgment n. o. v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n. o. v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.' " (Citations and punctuation omitted.) *Famiglietti v. Brevard Medical &c.*, 197 Ga. App. 164 (1) (397 SE2d 720) (1990). We cannot say that the evidence demanded a verdict for defendants in this case. It follows that the trial court did not err in denying defendants' motion for j.n.o.v. *Austin v. Kaufman*, 203 Ga. App. at 707.

2. Defendants also argue that the trial court erred in denying their motion in limine which would have prevented plaintiffs' attorney from arguing to the jury that, at the time Dr. Barnett gave his deposition which was introduced into evidence at trial, he was represented by defense counsel in connection with another matter. The transcript shows that counsel for both parties mentioned during their opening statements to the jury that Dr. Barnett was represented by defense counsel at the time his deposition was taken, and that defense counsel admitted he represented Dr. Barnett at that time. However, plaintiffs did not introduce any evidence proving the representation during trial, and prior to closing arguments defendants moved to exclude any reference to defense counsel's representation of Dr. Barnett during closing argument. See OCGA § 9-10-185. Plaintiffs' coun-

sel informed the court that it had been prepared to introduce evidence on this issue, but did not because defense counsel had admitted the representation during his opening remarks to the jury. The trial court ruled that it would give plaintiffs' counsel "a little leeway" and that counsel could mention the fact of representation to the jury but that any argument beyond that would be unfair to the defendants because no evidence had been presented. Plaintiffs' counsel mentioned the representation during his closing remarks, and attempted also to argue what effect the representation might have had on the witness' testimony. Defense counsel objected at this point and the court responded "All right. Go ahead." Plaintiffs' counsel then resumed his argument, but made no further mention of opposing counsel's representation of the witness.

Based on the foregoing, we conclude the trial court properly exercised its discretion in this case to ensure the proceedings were fairly conducted to both sides. "[T]he latitude allowed . . . was such that no harmful effect resulted to either [party]. Accordingly, a [new trial] will not be granted on this ground." *Ga. Northern R. Co. v. Hathcock*, 93 Ga. App. 72, 75 (3) (91 SE2d 145) (1955).

3. Contrary to defendants' contention otherwise, the trial court did not err by combining defendants' request to charge numbers 11 through 14 on unfavorable results. See *Smoky, Inc. v. McCray*, 196 Ga. App. 650 (5) (396 SE2d 794) (1990). Moreover, we agree that a charge on hindsight was not authorized by the evidence in this case and thus the trial court did not err by refusing to give defendants' request to charge on hindsight as they contend. *McCoy v. Alvista Care Home*, 194 Ga. App. 599 (391 SE2d 419) (1990).

4. (a) The trial court did not err in qualifying the jury as to defendants' liability insurance carrier. *Weatherbee v. Hutcheson*, 114 Ga. App. 761 (1) (152 SE2d 715) (1966).

(b) Defendants also urge as error the denial of their motion for mistrial after one of plaintiffs' experts made reference to malpractice insurance rates. The record shows, however, that the complained of testimony was elicited on cross-examination by defendants and that, contrary to defendants' assertions on appeal, the witness' answer was responsive to the question asked. This enumeration is, therefore, without merit.

5. Based on the foregoing, the trial court did not err in denying defendants' motion for new trial.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JULY 13, 1993 —
RECONSIDERATION DENIED JULY 29, 1993.

*Downey, Cleveland, Parker, Williams & Davis, Russell B. Davis,*

*W. Curtis Anderson*, for appellants.
  *Jean E. Johnson, Jr., Lance A. Cooper*, for appellees.