**THIRD DIVISION**
**GOBEIL,**
**COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 20, 2019**

# In the Court of Appeals of Georgia

A18A1565. GLOVER v. ATKINSON-SNEED, et al.

A18A1566. ATKINSON-SNEED, et al. v. GLOVER.

GOBEIL, Judge.

In February 2012, Nichole Glover brought the current action in Fulton County State Court against Adrienne M. Atkinson-Sneed, D. P. M. and Atkinson-Sneed's employer, Providence Foot and Ankle Centers, P. C. (collectively, "the Defendants"), asserting claims for medical malpractice and vicarious liability. The Defendants filed an answer, together with a motion to dismiss the complaint for failure to attach a valid expert affidavit as required by OCGA § 9-11-9.1. The trial court denied the motion to dismiss, and the case proceeded to trial in January 2017. The jury found in favor of the Defendants and the trial court entered judgment on the jury's verdict.

In Case No. A18A1565, Glover appeals from the trial court's order denying her motion to set aside the jury verdict and for a new trial. Glover contends that the trial court erred when it granted the Defendants' motion to prevent Glover from: (1) using her treating physician, who had been identified only as a fact witness, to provide expert testimony on the standard of care; and (2) presenting any evidence as to allegations of specific acts of professional negligence that were not raised until after the close of discovery. In Case No. A18A1566, the Defendants cross appeal the trial court's orders denying their motion to dismiss the complaint and their motion to deem admitted several of their requests for admission.

For reasons explained more fully below, we find no error by the trial court in granting the Defendants' motion to prevent Glover's treating physician from providing standard of care testimony and to exclude evidence of untimely allegations of professional negligence. In Case No. A18A1565, therefore, we affirm the denial of Glover's motion to set aside and for a new trial. Additionally, given our disposition of Glover's appeal, we dismiss the cross-appeal in Case No. A18A1566 as moot.

The facts relevant to this appeal are undisputed, and show that Glover was a patient of the Defendants from approximately November 2006 to August 2010. During that time, Atkinson-Sneed performed two surgeries involving a total of three

2

separate procedures on Glover's feet. In December 2007, Atkinson-Sneed operated on Glover's right foot, performing an osteotomy to realign the metatarsal bones and an arthroplasty of the big toe.[1] Following the surgery, Glover continued to experience pain in both feet, but especially her right foot. Atkinson-Sneed recommended additional surgery, which Glover underwent in February 2010. During the second surgery, Atkinson-Sneed performed an Aiken ostectomy[2] on Glover's right big toe and removed a bunion and/or bone spurs from Glover's left foot. After the second surgery, Glover continued to experience issues with her feet, including numbness, pain, and lack of mobility. In August 2010, at the recommendation of Atkinson-Sneed, Glover sought a second opinion and began treatment with another podiatrist, Dr. Mark Light.

In February 2012, Glover filed suit against the Defendants, alleging that Atkinson-Sneed had been negligent in: (1) failing to diagnose accurately the condition in Glover's right foot prior to the February 2010 surgery; (2) performing

---

[1] In this context, an osteotomy refers to the surgical realignment of one or more metatarsal bones, which are located in the area of the mid-foot. An arthroplasty is a surgical procedure to restore the function of a joint.

[2] During an ostectomy, part of a bone may be removed and, in some cases, replaced.

surgery on Glover's left foot in February 2010 and failing to surgically remove hardware from that foot; (3) fusing certain of the bones in Glover's right foot in December 2007 when she realigned Glover's toes; and (4) recommending that Glover resume wearing athletic shoes within three weeks after the December 2007 surgery. Attached to Glover's complaint was the expert affidavit of Tameka Lee Sanders, D. P. M., whose testimony supported the allegations of negligence set forth in the complaint.

*The Discovery Period*

During an extended discovery period, the Defendants served discovery requests on Glover, including interrogatories. Interrogatory Number 21 asked Glover, in relevant part, to "state separately and in reasonable detail each and every act or omission on the part of [the] Defendants that [you] claim[] to be negligent and a deviation from the applicable standard of [] care." Glover responded by referring the Defendants to Glover's first amended complaint "for some of the deviations from standard of care." Glover subsequently supplemented her response as follows: "See, Records Produced by Dr. Tameka Lee Sanders (Deposition taken by Counsel for Defendants March 9, 2015). See medical records of the treating physicians or practitioners who treated Ms. Glover for her injuries."

4

The Defendants' Interrogatory Number 19 asked Glover to identify "any witness whom you expect to call as an expert witness at trial, *including any of [Glover's] treating physicians from whom you may elicit standard of care or causation testimony at trial*." (Emphasis supplied). The interrogatory further asked that with respect to such witnesses, Glover identify, inter alia, "the subject matter on which the expert is expected to testify, a summary of the grounds for each opinion, [and] a listing of each and every act or omission by these Defendants which such expert contends falls beneath the standard of care." In responding to this interrogatory, Glover stated that she had "yet to determine who will be called as an expert witness at trial. Upon determining who will be called as an expert witness at trial, [Glover] will provide information required by the Georgia Civil Practice Act."

On February 20, 2015, the trial court entered a joint proposed scheduling order that was previously submitted by the parties. Pursuant to that order, the deposition of Glover's expert was to be completed by March 15, 2015; the deposition of the Defendants' expert was to be completed by April 30, 2015; the parties were to disclose any rebuttal experts within 45 days after the deposition of any expert whose testimony was to be rebutted (i.e., no later than June 15, 2015); and any party

identifying a rebuttal expert was to make that rebuttal expert available for deposition within 10 days of his or her identification.

The only expert identified by Glover during the discovery period was Dr. Sanders, whom defense counsel deposed in March 2015. During her deposition, Dr. Sanders testified as to the statements in her affidavit regarding the ways in which Atkinson-Sneed breached the standard of care in her treatment of Glover.[3] . After reviewing the allegations of the complaint and the expert affidavit with Dr. Sanders, defense counsel asked her if she could identify any other ways in which Atkinson-Sneed had breached the standard of care. Dr. Sanders replied, "[No,] I think that's it."

Discovery closed no later than December 3, 2015. The case was thereafter specially set for trial for January 9, 2017.

*Post-Discovery Supplemental Responses and Deposition Testimony*

More than a year after the close of discovery and less than a month before the scheduled start of trial, Glover began serving supplemental discovery responses. On

---

[3] Sanders's testimony clarified that although she believed Atkinson-Sneed breached the standard of care by performing an Aiken ostectomy in 2010 to treat a diagnosed hammertoe on Glover's right foot, she had no criticism of the way in which Atkinson-Sneed performed the surgical procedure. Instead, Sanders believed that Atkinson-Sneed had committed malpractice because the procedure was the incorrect surgery to treat Glover's diagnosed condition.

December 9, 2016, Glover supplemented her response to Interrogatory Number 19 (which asked her to identify her expert witnesses) as follows: "[Glover] may also call any treating physician or medical practitioner who treated her regarding the injuries complained of in the complaint." Approximately three weeks later, on December 29, Glover served her second supplemental response to Interrogatory Number 21 (which had asked her to identify Atkinson-Sneed's alleged acts of negligence). In this response, Glover asserted that in addition to the allegations of negligence set forth in her complaint and reflected in the affidavit of Dr. Sanders, "Dr. Atkinson-Sneed was negligent and failed to follow the requisite standard of care when she": (1) "performed an Aiken Bunionectomy (osteotemy) of Ms. Glover's right great toe on February 19, 2010, instead of either a fusion or an arthroplasty for a diagnosed hammertoe"; (2) "failed to diagnose the nonunion of the surgical site, post-surgery"; and (3) "failed to treat the nonunion of the surgical site, post-surgery, allowing for more degradation of the bone at the surgical site of the right proximal phalanx head."

On January 3, 2017, Glover filed a notice of deposition for her current podiatrist, Mark Light, indicating that the deposition would be used at trial in lieu of Dr. Light's live testimony. At his deposition, Dr. Light testified that he x-rayed Glover's feet in August 2010 and noted an irregular area or deformity where

7

Atkinson-Sneed had performed the Aiken osteotemy in February 2010. Dr. Light noted in the file that there was "a good probability that the absorbable screw" used in the procedure contributed to this deformity. He also noted that two pieces of bone at the site that should have fused together during the healing process had not done so.

Glover's attorneys also questioned Dr. Light about x-rays of Glover's feet taken by Atkinson-Sneed in March, April, and June 2010. Defense counsel objected on the grounds that Dr. Light had not reviewed these x-rays as part of his treatment of Glover, but instead had reviewed them more recently, after being provided with copies by Glover's attorneys. Over this objection, Dr. Light testified that he could see the potential for the non-union in the April 2010 x-rays, and that the non-union was definitely present in the June 2010 x-rays. Dr. Light opined, therefore, that by June 2010, he would have expected a podiatrist to recognize the non-union of bone at the surgical site, note it in the medical records, and address that condition. The x-rays showed that when left untreated, the non-union in Glover's right foot got progressively worse and possibly contributed to the degradation of the bone.

*Pretrial Motion to Limit Evidence*

Based on the objected-to testimony from Light's deposition, Glover's amended discovery responses, and a portion of the consolidated pretrial order proposed by

Glover,[4] Atkinson-Sneed filed a motion seeking to bar Glover from introducing evidence as to new allegations of negligence that were not asserted until just prior to trial. Specifically, Atkinson-Sneed sought to exclude any evidence that Atkinson-Sneed committed malpractice when she failed to diagnose and/or treat the non-union of bone in Glover's right foot. Atkinson-Sneed also sought to prevent Dr. Light from testifying as an expert witness on the standard of care, based on the fact that he had not been identified as an expert during the discovery period.

The trial court held a hearing on Atkinson-Sneed's motion immediately prior to trial, and granted the same. In granting the motion, the trial court held that: (1) because he had not been identified as an expert witness during the discovery period, Dr. Light could not offer any expert opinion regarding the standard of care or Atkinson-Sneed's breach thereof; and (2) Glover could not introduce any evidence as to her allegation that Atkinson-Sneed committed professional negligence when she failed to recognize and treat the non-union of bone in Glover's right foot, because that allegation had not been raised until just before trial. Immediately after this ruling, the case proceeded to trial, and the jury returned a defense verdict.

---

[4] In her portion of the proposed consolidated pretrial order, Glover alleged for the first time that the bone at the right proximal phalanx head had degraded as a result of Atkinson-Sneed's failure to diagnose or treat a nonunion at the surgical site.

*Case No. A18A1565*

1. In this appeal, Glover challenges the trial court's denial of her motion to set aside the verdict and for a new trial. Glover asserts that the trial court erred in granting the Defendants' pretrial motion to limit the testimony of Dr. Light and to prevent Glover from introducing evidence as to whether Atkinson-Sneed was negligent in failing to diagnose and treat the non-union of bone in Glover's right foot. Specifically, Glover argues that because Dr. Light was her treating physician, the trial court erred in finding that he was subject to the notice requirements for expert witnesses found in OCGA § 9-11-26 (b). Glover further asserts that the trial court erred in finding that Dr. Light's opinion that Atkinson-Sneed breached the standard of care when she failed to diagnose or treat the non-union of bone was not timely disclosed during discovery.

When reviewing Glover's claims, we are aware that a trial court has broad discretion to determine whether a violation of the discovery rules and/or the court's own scheduling order has occurred. See *Vaughan v. Wellstar Health System*, 304 Ga. App. 596, 601-602 (3) (696 SE2d 506) (2010). Where the court finds such a violation, it also has broad discretion to determine what, if any, sanctions to impose as punishment. Id. See also *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 308 (404 SE2d

10

607) (1991). "[A]nd appellate courts have consistently refused to interfere with the exercise of a trial court's discretion except in cases of clear abuse." *Jai Ganesh Lodging, Inc. v. David M. Smith, Inc.*, 328 Ga. App. 713, 716-717 (1) (760 SE2d 718) (2014) (citation and punctuation omitted). Such an abuse of discretion occurs only "where the trial court's ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law."*Chua v. Johnson*, 336 Ga. App. 298, 299 (784 SE2d 449) (2016) (citation and punctuation omitted). Bearing these principles in mind, we address Glover's claims of error.

(a) Rule 26 of the Georgia Civil Practice Act provides, in relevant part:

> A party may, through interrogatories, require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

OCGA § 9-11-26 (b) (4) (A) (i). A trial court may exclude the testimony of any expert not identified in response to the opposing party's interrogatories. See *Heyde*, 199 Ga. App. at 308 (exclusion of the proffered expert testimony of a witness is a proper

11

sanction for the offering party's failure to identify the expert pursuant to OCGA § 9-11-26 (b) (4) (A) (i)).

In this case, the Defendants' Interrogatory Number 19 asked Glover to identify any expert witnesses she anticipated calling at trial, including any of Glover's "treating physicians from whom you may elicit standard of care or causation testimony at trial." The only expert that Glover identified prior to the December 3, 2015 close of discovery, however, was Dr. Sanders. It was not until December 9, 2016, that Glover disclosed the possibility that she might call Dr. Light as an expert witness to provide standard of care or causation testimony at trial.[5]

On appeal, Glover does not dispute the fact that she failed to identify Dr. Light as an expert witness under Rule 26. Instead, Glover argues that Dr. Light was exempt from the requirements of OCGA § 9-11-26 (b) under what Glover calls the "treating physician exception." The rule on which Glover relies holds that the requirements for identifying expert witnesses apply "only to experts whose knowledge of the facts and opinions held were acquired or developed in anticipation of litigation or for trial, and

---

[5] Even Glover's supplemental response to Interrogatory Number 19 did not identify Dr. Light by name. Instead, the amended response stated only that Glover might also call any physician or practitioner who treated her for "the injuries complained of in the complaint."

12

not to an expert witness who is in fact an actor or observer of the subject matter of the suit." *Workman v. Crisco*, 328 Ga. App. 172, 173-174 (761 SE2d 574) (2014) (citation and punctuation omitted) (physical precedent only). In *Workman*, the plaintiff asserted a medical malpractice claim against his cardiologist, alleging that the plaintiff had been burned by an excessive dose of radiation he received during a catheterization procedure. Although he had not been identified as an expert witness pursuant to Rule 26, the trial court allowed a physicist employed in the hospital's radiation oncology department to testify as to his opinion regarding the amount of radiation the plaintiff had received. That opinion, in turn, was based on an investigation into the plaintiff's burn the physicist had performed in his capacity as the hospital's radiation safety officer. Given the circumstances, the trial court found that the physicist was testifying as a fact witness, and not as an expert witness on the standard of care. On appeal, this Court affirmed, finding that the physicist "was an actor or observer of the subject matter in [the] suit[,]" and therefore did not have to be identified under Rule 26. 328 Ga. App. at 174.

Similarly, in *Stewart v. Odunukwe*, 273 Ga. App. 380, 381-382 (615 SE2d 223) (2005), after a patient who had undergone emergency surgery to remove her gallbladder died of septic shock, her estate sued the surgeon. The lawsuit alleged that

13

the surgeon had negligently perforated or trapped the decedent's bowel, causing the bowel to die and leading to the decedent's septic shock. At trial, the defense called the hospital pathologist, who had examined the decedent's bowel tissue samples during her hospitalization. Having been identified as a fact witness during discovery, the pathologist testified as to his pathological findings, including that he found no evidence of bowel perforation. Instead, the pathologist testified that he saw indications that the decedent suffered from a clinical condition that prevented adequate blood flow to her intestine. He further testified that in his opinion, it was the lack of blood flow that caused the death of the decedent's bowel. The plaintiff objected to this testimony, on the grounds that the pathologist had not been identified as an expert witness in accordance with Rule 26. 273 Ga. App. at 380-381. The trial court overruled the objection and this Court affirmed, noting that the pathologist was a fact witness as to his pathological findings and he "made clear that he had no opinion regarding whether [the surgeon] breached any standard of care." Id. at 382.

Finally, in *Austin v. Kaufman*, 203 Ga. App. 704 (417 SE2d 660) (1992), the decedent entered the hospital for routine back surgery. During that surgery, one of her iliac arteries was severed and an iliac vein was severely damaged. As a result of the damage to her vascular system, the decedent died, and her estate brought a medical

14

malpractice action. 203 Ga. App. at 704. At trial, the plaintiff presented the medical examiner who had signed the death certificate to provide expert testimony as to the cause of death. The defense objected on the grounds that the medical examiner had not been identified as an expert pursuant to Rule 26, but the trial court overruled the objection. We affirmed that ruling on appeal, holding that the medical examiner, "by virtue of signing [the decedent's] death certificate, was an actor or observer of the subject matter of the suit" and the plaintiff therefore was not required to identify him as anything other than a fact witness. 203 Ga. App. at 709 (7).

Relying on the foregoing cases, Glover points out that when Dr. Light first saw her in August 2010, he noted and documented the deformity and non-union of bone at the 2010 surgical site, as well as the decreased bone density in that area. Given this fact, Glover argues that Dr. Light's opinion as to Atkinson-Sneed's negligence in failing to diagnose and treat the non-union was formed as part of his treatment of Glover and was not developed in anticipation of trial. Thus, Glover reasons that Dr. Light should have been allowed to provide opinion testimony as to the standard of care and Atkinson-Sneed's breach thereof, despite Glover's failure to identify him as an expert witness. We find this argument unpersuasive.

15

We first note that Glover's position is not supported by the record. Dr. Light's deposition testimony shows that during his treatment of Glover, he x-rayed her feet in August 2010. Based on those x-rays, Dr. Light noted in Glover's chart the issues at the surgical site on her right foot, including the non-union of bone and the degradation of bone in the big toe. At that time, however, Dr. Light did not have the x-rays taken by Atkinson-Sneed in March, April, and June 2010. Thus he could not have known (and he did not note in Glover's chart) that Atkinson-Sneed had failed to diagnose or treat the non-union. Nor could Dr. Light have known that the big toe joint had degraded since the February 2010 surgery, either as a result of the non-union or otherwise. Instead, Dr. Light's testimony shows that he reviewed the x-rays from Atkinson-Sneed's office just prior to his January 2017 deposition, and that he did so not as part of his treatment of Glover, but at the request of defense counsel. And it was not until reviewing those x-rays that Dr. Light could have formed any opinion as to Atkinson-Sneed's negligence in failing to diagnose and treat the non-union. The record, therefore, supports the trial court's conclusion that Dr. Light's standard of care opinions were not formulated in his capacity as "an actor or observer of the subject matter of the suit." Instead, his knowledge of the facts relevant to his

16

opinion that Atkinson-Sneed was negligent in failing to diagnose and treat the non-union was acquired (and therefore his opinion was developed) in anticipation of trial.

More importantly, Glover's argument seems to misunderstand the legal rule on which she relies. Neither *Workman*, *Stewart*, nor *Austin* held that a treating practitioner who has not been identified pursuant to Rule 26 may offer opinion testimony on the standard of care. Moreover, our precedent supports the opposite conclusion – i.e., that where an expert has been identified only as a fact witness, he or she may not offer opinion testimony as to the standard of care. See *Hewell v. Trover*, 314 Ga. App. 738, 740 (725 SE2d 853) (2012). *Hewell* was a medical malpractice action arising out of a patient's death from untreated pneumonia. At trial, the court allowed a medical examiner who had been identified as a fact witness to give her expert opinion as to the decedent's cause of death. 314 Ga. App. at 738-739. However, the court did not allow the medical examiner to provide expert testimony as to whether decedent's treating physician should have recognized decedent's symptoms two days before his death. On appeal, we affirmed that ruling, holding that the excluded testimony "did not fall within the scope of the medical examiner's contemplated testimony [as a fact witness], but was an expert opinion not identified or summarized before trial." 314 Ga. App. at 740.

17

Read together, the foregoing cases establish that in a medical malpractice action, a party may present expert testimony from a fact witness (i.e., a witness who does not have to be identified pursuant to Rule 26), who is testifying as to facts he or she observed or learned of during the course of treating the plaintiff or otherwise working on the plaintiff's medical case. Additionally, such an expert may testify as to any conclusions he or she drew about the plaintiff's condition and/or the cause of that condition. Such a fact witness may not, however, provide expert opinion testimony on the standard of care and whether that standard was breached, unless the witness has been identified as an expert in accordance with OCGA § 9-11-26 (b) (4) (A) (i). Applying this law to the case at hand, we find no abuse of discretion by the trial court in barring Dr. Light from providing expert testimony as to the applicable

standard of care and/or Atkinson-Sneed's breach thereof.[6] Id. See also *Heyde*, 199 Ga. App. at 308.

(b) Glover also contends that the trial court erred in excluding Dr. Light's standard of care opinions on the grounds that the alleged acts of negligence serving as the basis for those opinions (Atkinson-Sneed's failure to diagnose or treat the non-union of bone), were not identified or alleged prior to the close of discovery. Given our holding in Division 1 (a), that the trial court did not abuse its discretion by excluding Dr. Light as a standard of care expert based on Glover's failure to identify him pursuant to OCGA § 9-11-26 (b) (4) (A) (i), we need not address this claim of error.

For the reasons set forth above, we affirm the trial court's denial of Glover's motion to set aside the verdict and for a new trial.

---

[6] We reiterate that the trial court's ruling allowed Glover to use Dr. Light as a fact witness. Thus, we assume Dr. Light was able to testify that when he saw Glover in August 2010, he knew that she had undergone surgery in February 2010; that based on his August 2010 x-rays of Glover's feet, he noticed a deformity or irregularity, a non-union of bone, and a degradation of bone at the surgical site; and that he treated Ms. Glover for those conditions. We also assume that Dr. Light was able to offer his opinion as to what caused those conditions, provided that opinion was relevant to his treatment of Glover. We note, however, that Glover did not include a transcript of the trial in the appellate record and we therefore have no way of determining what portion of Dr. Light's testimony was played for the jury.

19

*Case No. A18A1566*

2. Given our affirmance in Case No. A18A1565, we dismiss as moot the Defendants' cross-appeal in Case No. A18A1566.

*Judgment affirmed in A18A1565 and appeal dismissed as moot in A18A1566. Coomer and Hodges, JJ., concur.*